# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 50116-3-II |
| Respondent, | |
| v. | |
| ROBERT VANDERVORT, | UNPUBLISHED OPINION |
| Appellant. | |

LEE, J. — Robert Vandervort appeals his convictions for two counts of unlawful possession of a controlled substance. Vandervort argues that (1) he proved unwitting possession by a preponderance of the evidence;[1] (2) the State committed prosecutorial misconduct by (a) misstating the law, (b) impugning defense counsel, and (c) improperly arguing that the jury had to find that its witnesses were lying to acquit; and (3) defense counsel provided ineffective assistance by (a) failing to object to the State's misconduct and (b) failing to properly investigate and present a defense. We hold that Vandervort's claims fail and affirm.

---

[1] In his assignment of error, Vandervort frames this issue as an "insufficient evidence" challenge, but he argues that "there is insufficient evidence to convict" him because "no rational finder of fact could find that [he] failed to prove unwitting possession by a preponderance of the evidence." Br. of Appellant at 8, 10.

FACTS

A.     THE INCIDENT AND CHARGES

On July 30, 2016, the Olympia Police Department asked the Mason County Sheriff's Office to assist with an investigation into two men using counterfeit money at garage sales. The two men were linked to a vehicle registered at an address in Mason County.

When Deputy Anderson of the Mason County Sheriff's Office arrived at the vehicle's registered address, he saw Vandervort and another man outside. Deputy Anderson told Vandervort that he needed to speak with him, but Vandervort ran into the home. After additional officers arrived to assist, they learned that Vandervort had warrants for his arrest. The officers then spoke with the homeowner, who allowed them to enter and search the home. When the officers entered the home, they found Vandervort hiding under a bed and arrested him.

Deputy Anderson found an electronic scale in Vandervort's pants pocket in a search incident to arrest. Deputy Anderson opened the lid of the scale and observed a white crystal-like substance that he believed to be methamphetamine based on his training and experience. The substance was visible to the naked eye. Deputy Anderson field tested the substance, which tested positive for methamphetamine. He did not test the scale for heroin. Deputy Anderson then secured the scale into evidence and submitted it to the Washington State Patrol Crime Lab for testing.

The crime lab tested the residue on the scale and found that it contained methamphetamine and heroin. The State charged Vandervort by amended information with two counts of unlawful possession of a controlled substance, one count for methamphetamine and one count for heroin.

B.    TRIAL[2]

At trial, Deputy Anderson testified to the events above. Deputy Anderson also testified that scales like the one found on Vandervort are found a lot and are associated with illegal substances. The crime lab forensic scientist testified that the substances found on the scale were methamphetamine and heroin.

Vandervort testified that on July 30, 2016, he went to pick up a friend's car because his friend was arrested and wanted him to pick it up. He said that when he got to the car, he saw the scale in the center console of the car and stuck it in his pocket. He did not open the scale or see what was inside. Vandervort also testified that he was familiar with drugs and that he had never seen drugs kept in a scale. But he also said that he knew that such scales were used to weigh drugs. If he had known that there were drugs on the scale, he would have gotten rid of it. Vandervort further testified that his drug of choice used to be methamphetamine, he had been previously convicted of possession of methamphetamine, he had been sober since 2013, and he had never used heroin.

C.    JURY INSTRUCTIONS

The trial court instructed the jury that it had "to decide the facts in this case based upon the evidence presented to [it] during this trial," that they were "the sole judges of the credibility of each witness [and] . . . the value or weight to be given to the testimony of each witness," "that the lawyers' statements [were] not evidence," and that the jury had to "disregard any remark, statement, or argument that [was] not supported by the evidence or the law in [the court's]

---

[2] The first trial in this case resulted in a mistrial.

instructions." Clerk's Papers (CP) at 28-30. The trial court then instructed the jury that to convict

Vandervort of possession of methamphetamine, the jury had to find each of the following elements

proved beyond a reasonable doubt:

> (1) That on or about July 30, 2016, the defendant possessed a controlled substance Methamphetamine; and

> (2) That this act occurred in Mason County, State of Washington.

CP at 42. The trial court gave the jury a similar to-convict instruction for the heroin charge. The trial court also instructed the jury:

> A person is not guilty of possession of a controlled substance if the possession is unwitting. Possession of a controlled substance is unwitting if a person did not know that the substance was in his possession or did not know the nature of the substance.

> The burden is on the defendant to prove by a preponderance of the evidence that the substance was possessed unwittingly. Preponderance of the evidence means that you must be persuaded, considering all of the evidence in the case, that it is more probably true than not true.

CP at 45. The trial court further instructed the jury:

> A person knows or acts knowingly or with knowledge with respect to a fact, circumstance, or result when he is aware of that fact, circumstance, or result. It is not necessary that the person know that the fact, circumstance, or result is defined by law as being unlawful or an element of a crime.

> If a person has information that would lead a reasonable person in the same situation to believe that a fact exists, the jury is permitted but not required to find that he acted with knowledge of that fact.

CP at 46.

D.     CLOSING ARGUMENTS AND VERDICT

During closing arguments, the State argued:

[T]he to convict instruction . . . On or about July 30, 2016, defendant possessed a controlled substance, methamphetamine, occurred in Mason County, State of

Washington. I mention this instruction more so for what's not in it than what is in it. There's no mental state in this instruction. There's no mens rea, evil mind. . . . [T]his is a strict liability crime. And the State's proven Counts I and II beyond a reasonable doubt in this particular case because the scale was on his person, and it tested positive for the two substances, and occurred in Mason County, State of Washington on or about July 30, 2016. That proves all the elements of the crime.

I know it seems counterintuitive. Well wait a second, if I didn't know that I had that, how can I be guilty of it? Well, that brings us to the unwitting possession defense. . . . And this is the part that is the except [sic] as authorized by law section. That's how this ties together. And there are two ways that you get to an unwitting possession defense, and they're laid out. Didn't know that I had it, or didn't know what it was. Well, he knew that he had it. He indicated as much on the stand. And his prior criminal history possessing methamphetamine, that indicates that he knew what it was. And the heroin too in that particular case.

. . . .

. . . [E]ven though a statement wasn't taken of Mr. Vandervort in this case, that's no reason for you to find—to not find him guilty in this particular case because the evidence and the weight of it is so stacked against him, you would have to find Mr. Vandervort's testimony more credible than that of the officers. And you'd also have to ignore the admissions that Mr. Vandervort made on the stand.

Verbatim Report of Proceeding (VRP) (Feb. 3, 2017) at 403-405.

During rebuttal arguments, the State argued:

Really the entire defense in this particular case, and getting up and admitting to something else, it's really kind of a distraction technique. It's somewhat reminiscent of sitting around the dinner table, your kids and dad comes in and says, Michael, I see that you got an F in algebra. Well that may be true, dad, but Mark is smoking pot. It doesn't mean that Michael didn't get an F in algebra. It's just admitting to something else as a distraction and confusion technique. Especially when there's no other charge. There's nothing dealing with stolen property. That's just really foundation as to how they came into contact with Mr. Vandervort.

VRP (Feb. 3, 2017) at 417-18. Vandervort did not object to the State's closing and rebuttal arguments.

The jury convicted Vandervort as charged. Vandervort appeals.

5

ANALYSIS

A.    UNWITTING POSSESSION AFFIRMATIVE DEFENSE

Vandervort argues that "there is insufficient evidence to convict" him because "no rational finder of fact could find that [he] failed to prove unwitting possession by a preponderance of the evidence." Br. of Appellant at 8, 10. We disagree.

Under RCW 69.50.4013(1), "It is unlawful for any person to possess a controlled substance unless the substance was obtained directly from, or pursuant to, a valid prescription or order of a practitioner while acting in the course of his or her professional practice, or except as otherwise authorized by this chapter." Methamphetamine and heroin are controlled substances. RCW 69.50.101(f), .204(b)(11), .206(d)(2).

Unlawful possession of a controlled substance does not require proof of knowledge. *State v. Higgs*, 177 Wn. App. 414, 437, 311 P.3d 1266 (2013), *review denied*, 179 Wn.2d 1024 (2014). Rather, the State must only prove beyond a reasonable doubt that Vandervort possessed the controlled substance. *State v. Hathaway*, 161 Wn. App. 634, 645, 251 P.3d 253, *review denied*, 172 Wn.2d 1021 (2011). However, Washington recognizes unwitting possession as an affirmative defense to the charge of unlawful possession of a controlled substance. *Higgs*, 177 Wn. App. at 437. To prove unwitting possession, the defendant must show by a preponderance of the evidence that he did not know that the substance was in his possession or did not know the nature of the substance. *State v. Olinger*, 130 Wn. App. 22, 26, 121 P.3d 724 (2005), *review denied*, 157 Wn.2d 1009 (2006). The existence of the defense is a question for the trier of fact. *State v. Knapp,* 54 Wn. App. 314, 322, 773 P.2d 134, *review denied*, 113 Wn.2d 1022 (1989).

We defer to the trier of fact on factual determinations. *Olinger*, 130 Wn. App. at 26. We also defer to the trier of fact on issues such as conflicting testimony, witness credibility, and persuasiveness of the evidence. *Higgs*, 177 Wn. App. at 436. The trier of fact is in the best position to evaluate conflicting evidence, witness credibility, and the weight of the evidence. *Olinger*, 130 Wn. App. at 26. We do not reweigh the evidence and substitute our judgment for that of the trier of fact. *State v. McCreven*, 170 Wn. App. 444, 477, 284 P.3d 793 (2012), *review denied*, 176 Wn.2d 1015 (2013).

Here, the jury rejected Vandervort's unwitting possession defense and found him guilty of unlawful possession of methamphetamine and heroin. To prove unwitting possession, Vandervort had to show by a preponderance of the evidence that he did not know that the substances were in his possession or did not know the nature of the substances. *Olinger*, 130 Wn. App. at 26. But the existence of the defense is a question for the trier of fact and the jury here found that Vandervort failed to prove the defense. *Knapp*, 54 Wn. App. at 322. We do not reweigh the evidence or substitute our judgment for the jury. *McCreven*, 170 Wn. App. at 477.

Vandervort argues that no rational trier of fact could find that he failed to prove unwitting possession by a preponderance of the evidence. However, the evidence showed that when Deputy Anderson told Vandervort that he needed to speak with him, Vandervort ran into the home and hid under a bed; Deputy Anderson found a scale in Anderson's pocket during a search incident to arrest; the substance on the scale was methamphetamine and heroin; Vandervort was familiar with drugs as evidenced by his prior use of methamphetamine; and Vandervort knew such scales were used to weigh drugs. Although Vandervort testified that he got the scale from a friend's car, he did not open the scale or see what was inside, and he would have gotten rid of it had he known

there were drugs on it, the jury apparently found Vandervort's testimony not credible. And we defer to the trier of fact on issues of witness credibility and persuasiveness of evidence. *Higgs*, 177 Wn. App. at 436. Thus, we hold that Vandervort's claim that he proved unwitting possession by a preponderance of the evidence fails.

B.       PROSECUTORIAL MISCONDUCT

Vandervort argues that the State committed prosecutorial misconduct by (1) misstating the law, (2) impugning defense counsel, and (3) making an improper argument about having to find the witnesses were lying. We disagree.

To prevail on a claim of prosecutorial misconduct, a defendant must establish that the prosecutor's conduct was improper and prejudicial. *State v. Emery*, 174 Wn.2d 741, 756, 278 P.3d 653 (2012). We first determine whether the prosecutor's conduct was improper. *Id.* at 759. Any allegedly improper statements are reviewed in the context of the entire case, the entire argument, the issues in the case, the evidence discussed in the argument, and the jury instructions. *State v. Thorgerson*, 172 Wn.2d 438, 443, 258 P.3d 43 (2011); *State v. Dhaliwal*, 150 Wn.2d 559, 578, 79 P.3d 432 (2003). In the context of closing arguments, a prosecutor has wide latitude to make arguments to the jury and may draw reasonable inferences from the evidence. *State v. Magers*, 164 Wn.2d 174, 192, 189 P.3d 126 (2008). If the prosecutor's conduct was improper, the question turns to whether the misconduct resulted in prejudice. *Emery*, 174 Wn.2d at 760. Prejudice is established by showing a substantial likelihood that such misconduct affected the verdict. *Id.*

Where a defendant does not object at trial, he is deemed to have waived any error unless the prosecutor's misconduct was so flagrant and ill-intentioned that an instruction could not have cured any resulting prejudice. *Id.* at 760-61. Under this heightened standard, the defendant must

show that "(1) 'no curative instruction would have obviated any prejudicial effect on the jury' and (2) the misconduct resulted in prejudice that 'had a substantial likelihood of affecting the jury verdict.' " *Id.* at 761 (quoting *Thorgerson*, 172 Wn.2d at 455). In making that determination, we "focus less on whether the prosecutor's misconduct was flagrant or ill intentioned and more on whether the resulting prejudice could have been cured." *Id.* at 762. In determining prejudice, we look at the comments "in the context of the total argument, the issues in the case, the evidence, and the instructions given to the jury." *State v. Warren*, 165 Wn.2d 17, 28, 195 P.3d 940 (2008), *cert. denied*, 556 U.S. 1192 (2009). The jury is presumed to follow the trial court's instructions. *State v. Anderson*, 153 Wn. App. 417, 428, 220 P.3d 1273 (2009), *review denied*, 170 Wn.2d 1002 (2010).

       1.     Misstating the Law

Vandervort argues that the State committed prosecutorial misconduct by misstating the law when it argued about what the unwitting possession defense required and that Vandervort knew he had the drugs. We disagree.

A prosecutor commits misconduct by misstating the law. *State v. Allen*, 182 Wn.2d 364, 373, 341 P.3d 268 (2015). Such misstatements have "grave potential to mislead the jury." *State v. Davenport*, 100 Wn.2d 757, 763, 675 P.2d 1213 (1984). But a prosecutor's statements must be considered in context. *State v. Swanson*, 181 Wn. App. 953, 964, 327 P.3d 67 (holding that a prosecutor's conduct is reviewed in the full context, considering the issues, arguments, evidence, and instructions presented and given to the jury), *review denied*, 181 Wn.2d 1024 (2014). A prosecutor may not refer to evidence not presented at trial; but, in the context of closing arguments,

a prosecutor has wide latitude to make arguments to the jury and may draw reasonable inferences from the evidence. *Magers*, 164 Wn.2d at 192.

Here, to prove unwitting possession, Vandervort had to show by a preponderance of the evidence that he did not know that the substances were in his possession or did not know the nature of the substances. *Olinger*, 130 Wn. App. at 26. In closing arguments, the State said that "there are two ways that you get to an unwitting possession defense, and they're laid out. Didn't know that I had it, or didn't know what it was." VRP (Feb. 3, 2017) at 404. This statement mirrors the law regarding unwitting possession and was a proper statement of the law.

Vandervort argues that the State misstated the law by arguing Vandervort knew he had the drugs. However, the State's argument that Vandervort knew he had the drugs was a statement of fact, not law, and it was a reasonable inference from the evidence. At trial, evidence was presented that the scale was found on Vandervort and that such scales are associated with illegal substances. Evidence was also presented that the substance on the scale was visible to the naked eye, Vandervort knew such scales were used to weigh drugs, and Vandervort was familiar with drugs. From such evidence, the State could and did make a reasonable inference, and argued that Vandervort knew that the scale had methamphetamine and heroin on it. *Magers*, 164 Wn.2d at 192. The State's argument was not improper.

Furthermore, Vandervort did not object to the State's argument and, thus, has waived this claim because a jury instruction could have cured any prejudice. *Emery*, 174 Wn.2d at 760-61. Also, the trial court instructed the jury on unwitting possession; that the jury had to decide the case on the evidence presented at trial; that the lawyers' remarks were not evidence; and that the jury must disregard any remark, statement, or argument that was not supported by the evidence or the

10

law as set forth in the court's instructions. The jury is presumed to follow the court's instructions. *Anderson*, 153 Wn. App. at 428. Therefore, this claim fails.

2.      Impugning Defense Counsel

Vandervort argues that the State committed prosecutorial misconduct by impugning defense counsel with its argument that the entire defense was a distraction technique. We disagree.

It is improper for a prosecutor to disparagingly comment on defense counsel's role or impugn defense counsel's integrity. *Thorgerson*, 172 Wn.2d at 451. A prosecutor's statement that maligns defense counsel can severely damage a defendant's opportunity to present his case and is, therefore, impermissible. *State v. Lindsay*, 180 Wn.2d 423, 432, 326 P.3d 125 (2014). A prosecutor improperly impugns defense counsel's integrity when he states that defense counsel is using deception or dishonesty. *See id.* at 433 (holding that it was improper for the prosecutor to say that defense counsel's argument was a "crock" because it implied the use of deception and dishonesty); *Thorgerson*, 172 Wn.2d at 452 (holding that it was improper for the prosecutor to refer to the defense's case as "sleight of hand" because the phrase implied the use of "wrongful deception or even dishonesty"); *Warren*, 165 Wn.2d at 29 (holding that it was improper for the prosecutor to state that "there were a 'number of mischaracterizations' in defense counsel's argument as 'an example of what people go through in a criminal justice system when they deal with defense attorneys' "); *State v. Negrete*, 72 Wn. App. 62, 66-67, 863 P.2d 137 (1993) (holding that it was improper for the prosecutor to argue that defense counsel was "*being paid to twist the words of the witnesses by [the defendant]*"), *review denied¸* 123 Wn.2d 1030 (1994).

Here, the State did not impugn defense counsel by arguing that the defense was deceptive or dishonest. *See Lindsay*, 180 Wn.2d at 433. In rebuttal argument, the State argued, "Really the

entire defense in this particular case, and getting up and admitting to something else, it's really kind of a distraction technique. . . . It's just admitting to something else as a distraction and confusion technique. Especially when there's no other charge. There's nothing dealing with stolen property." VRP (Feb 3, 2017) at 417-18. In making this argument, the State did not argue that defense counsel was deceiving the jury or being dishonest to the jury. Rather, the State argued that defense counsel was trying to draw the jury's attention to a different uncharged crime, which did not mean that Vandervort did not commit the crime actually charged. The State's argument focused on the evidence that was presented and told the jury to focus on the evidence that supported the charges. This was not improper.

Furthermore, even if the State's argument constituted misconduct, Vandervort did not object to the State's argument and has waived this claim because an instruction could have cured any prejudice. *Emery*, 174 Wn.2d at 760-61. Therefore, we hold that this claim fails.

3. Witnesses Lying

Vandervort argues that the State committed prosecutorial misconduct by arguing that the jury had to find that the State's witnesses were lying in order to acquit Vandervort. We disagree.

A prosecutor may not argue that the jury must find that the State's witnesses are either lying or mistaken in order to acquit a defendant. *State v. Rafay*, 168 Wn. App. 734, 836, 285 P.3d 83 (2012), *review denied*, 176 Wn.2d 1023 (2013). "Such arguments may undermine the presumption of innocence, shift the burden of proof, and mislead the jury." *Id*.

Here, the State did not argue that the jury had to find that its witnesses were lying in order to acquit Vandervort. In closing arguments, the State argued:

> [E]ven though a statement wasn't taken of Mr. Vandervort in this case, that's no reason for you to find—to not find him guilty in this particular case because the evidence and the weight of it is so stacked against him, you would have to find Mr. Vandervort's testimony more credible than that of the officers. And you'd also have to ignore the admissions that Mr. Vandervort made on the stand.

VRP (Feb. 3, 2017) at 404-405. The State's argument focused on the credibility of the witnesses. The State did not say that the jury had to make a choice between acquitting Vandervort and determining that the officers were lying. Thus, we hold that the State did not commit misconduct with its argument.

Furthermore, even if the State's argument constituted misconduct, Vandervort did not object to the State's argument and has waived this claim. *Emery*, 174 Wn.2d at 760-61. The trial court instructed the jury that it had to decide the case on the evidence presented at trial; that the lawyers' remarks were not evidence; that it must disregard any remark, statement, or argument that was not supported by the evidence or the law as set forth in the court's instructions; and that it was the sole judge of credibility. Although Vandervort argues that the State's argument was prejudicial because it asked the jury to weigh the credibility of the officer's versus the credibility of Vandervort, that is the role of the jury—to determine issues of conflicting testimony, credibility, and weight of evidence. *Higgs*, 177 Wn. App. at 437. Therefore, this claim fails.

C.    INEFFECTIVE ASSISTANCE OF COUNSEL

Vandervort argues that defense counsel provided ineffective assistance by failing to (1) object to the State (a) misstating the law, (b) impugning defense counsel, and (c) arguing that the jury had to find that its witnesses were lying to acquit him; and (2) investigate the case and present a defense. We disagree.

1.    Legal Principles

To establish ineffective assistance of counsel, a defendant must show both deficient performance and resulting prejudice. *State v. McFarland*, 127 Wn.2d 322, 334-35, 899 P.2d 1251 (1995). Failure to establish either prong of the test ends our inquiry. *State v. Foster*, 140 Wn. App. 266, 273, 166 P.3d 726, *review denied*, 162 Wn.2d 1007 (2007).

Deficient performance occurs when counsel's performance falls below an objective standard of reasonableness. *State v. Stenson*, 132 Wn.2d 668, 705, 940 P.2d 1239 (1997), *cert. denied*, 523 U.S. 1008 (1998). There is a strong presumption of effective assistance, and the defendant bears the burden of rebutting that presumption by showing the lack of a legitimate strategic or tactical reason for the challenged conduct. *McFarland*, 127 Wn.2d at 336-37. This court views the decisions of whether to object as "classic example[s] of trial tactics." *State v. Madison*, 53 Wn. App. 754, 763, 770 P.2d 662, *review denied*, 113 Wn.2d 1002 (1989). When a defendant bases his ineffective assistance of counsel claim on trial counsel's failure to object, the defendant must show that the objection would likely have succeeded. *State v. Gerdts*, 136 Wn. App. 720, 727, 150 P.3d 627 (2007). "The absence of an objection by defense counsel strongly suggests to a court that the argument or event in question did not appear critically prejudicial to an appellant in the context of the trial." *State v. Edvalds*, 157 Wn. App. 517, 525-26, 237 P.3d 368 (2010), *review denied*, 171 Wn.2d 1021 (2011). " 'Only in egregious circumstances, on testimony central to the State's case, will the failure to object constitute incompetence of counsel justifying reversal.' " *State v. Johnston*, 143 Wn. App. 1, 19, 177 P.3d 1127 (2007) (quoting *Madison*, 53 Wn. App. at 763).

Resulting prejudice must also be shown. *McFarland*, 127 Wn.2d at 335. The defendant must demonstrate that there is a reasonable probability that, but for counsel's deficient performance, the result of the proceeding would have been different. *Id*.

2.      Failure to Object

Vandervort argues that defense counsel provided ineffective assistance by failing to object to the State (a) misstating the law, (b) impugning defense counsel, and (c) arguing that the jury had to find that its witnesses were lying to acquit. We disagree.

a.      Misstating the law

The State did not misstate the law with its argument about what the unwitting possession defense required. *See supra* Section B.1. Therefore, defense counsel did not provide ineffective assistance by failing to object to the State's argument on unwitting possession.

b.      Impugning defense counsel

The State did not impugn defense counsel with its argument about Vandervort's defense being a distraction technique. *See supra* Section B.2. As a result, defense counsel did not provide ineffective assistance by failing to object to the State's argument.

c.      Witnesses lying

The State did not argue that the jury had to find that its witnesses were lying in order to acquit Vandervort, as mentioned above. *See supra* Section B.3. Thus, defense counsel did not provide ineffective assistance by failing to object to the State's argument on finding Vandervort more credible than the officers.

3.      Failure to Investigate and Present a Defense

Vandervort argues that defense counsel at trial provided ineffective assistance by failing to investigate and present a defense. Specifically, Vandervort argues that defense counsel failed to "call any of the officers from Olympia who were involved in the arrest or search of the vehicle in Olympia as witnesses," to "interview at least one potential defense witness," and to "adequately review the hearsay rules and incorrectly assumed counsel would be able to elicit the information about the vehicle involved in the arrest in Olympia through the State's witnesses." Br. of Appellant at 18-19.

To provide effective assistance, defense counsel must investigate the case, which includes investigation of witnesses. *State v. Visitacion*, 55 Wn. App. 166, 173–74, 776 P.2d 986 (1989). "Failure to investigate or interview witnesses, or to properly inform the court of the substance of their testimony, is a recognized basis upon which a claim of ineffective assistance of counsel may rest." *State v. Ray*, 116 Wn.2d 531, 548, 806 P.2d 1220 (1991)

Here, the record does not contain any information about any officers from Olympia, what information they may have had with regard to arrests made in an unrelated incident, and the subsequent search of a vehicle in Olympia. The record also does not contain any information about the witness Vandervort claims was present during the arrest and search in the unrelated incident in Olympia. Nor does Vandervort identify the alleged witness. Thus, Vandervort relies on matters outside of the record to support his ineffective assistance of counsel claim. Matters that are outside of the record cannot be considered on direct appeal. *State v. Kinzle*, 181 Wn. App. 774, 786, 326 P.3d 870, *review denied*, 181 Wn.2d 1019 (2014). For us to consider matters outside of the record,

the defendant must file a personal restraint petition under RAP 16.3. *McFarland*, 127 Wn.2d at 335. Therefore, we do not address this claim.

We affirm.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Lee, J.

We concur:

Worswick, J.

Maxa, C.J.